# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# 2:10cv19

| | |
|---|---|
| GMAC MORTGAGE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CURTIS J. MATHEWS and CAROL ) | |
| W. MATTHEWS, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Pending before the Court is Plaintiff's Motion for Prejudgment Attachment or Preliminary Injunction [# 34]. The Court held a hearing on Plaintiff's motion on July 7, 2011. At the hearing, the Court orally granted Plaintiff's requests for a prejudgment attachment and issued a preliminary injunction. Pursuant to the Court's oral Order of July 7, 2011, the Court enters this written order **GRANTING** Plaintiff's Motion for Prejudgment Attachment [# 34] and supplementing its prior oral Order.

## I.      Background

In 2006, Defendants obtained a loan in the amount of $700,000.00 for the purchase of property located in Highlands, North Carolina. Defendants executed a Note and Deed of Trust to secure the loan. The Note and Deed of Trust were later

1

assigned to Plaintiff. Per the terms of the Deed of Trust, the property was insured to protect Plaintiff's interest in the property. The policy was later amended to identify Plaintiff as the secured interested party.

In 2008, a fire destroyed the property. Defendants then submitted an insurance claim to the insurance company. On March 25, 2009, the insurance company issued a check in the amount of $474,600.00, which was made payable to Defendants, Plaintiff, and others.

The Deed of Trust at issue provides that:

> In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair or restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.
>
> . . . [I]f Lender acquires the Property [pursuant to foreclosure], Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under

2

> all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

(Ex. B to Am. Compl. at ¶ 5.)

On July 31, 2009, Defendants endorsed the check on behalf of Plaintiff and presented it for payment. Defendants contend that Plaintiff's representatives gave them oral authority to endorse the check on behalf of Plaintiff and deposit the check into their account. Meanwhile, on July 28, 2009, the property was sold at foreclosure sale to Plaintiff. At the time of the foreclosure, Defendants owed $691,890.00.

Approximately eight months after Defendants deposited the insurance proceeds, Plaintiff demanded the return of the funds. Defendants did not return the funds, and this action ensued. Plaintiff seeks a judgment in the amount of $474,600.00 for the alleged fraudulent conversion of the insurance proceeds.

During discovery, Defendants acknowledged that they were continuing to either spend or transfer the insurance proceeds to third parties. At the hearing, upon questioning by the Court, counsel for Defendants stated that Defendants have continued to deplete the insurance proceeds at the rate of approximately $20,000.00 a month since April 1, 2011. Accordingly, Plaintiff moves this Court for a prejudgment attachment and/or preliminary injunction prohibiting Defendants from further depleting the funds at issue.

## II. Analysis

### A. Prejudgment Attachment

Rule 64 of the Federal Rules of Civil Procedure provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). Attachment is one of the specific remedies listed in Rule 64 that is available to federal court litigants. Fed. R. Civ. P. 64(b). "The chief purpose of attachment proceedings is to secure a contingent lien on the defendant's property until the plaintiff can, by appropriate proceedings, obtain a judgment and have such property applied to its satisfaction." Ross v. Peck Iron & Metal Co., 264 F.2d 262, 268 (4th Cir. 1959).

The Court looks to North Carolina law for guidance as to when pre-judgment attachment is appropriate in a case. See Fed. R. Civ. 64(a). Pursuant to the applicable North Carolina statute, "[a]ttachment may be had in any action the purpose of which . . . is to secure a judgment for money . . . ." N.C. Gen. Stat. § 1-440.2. One of the grounds for obtaining an order of attachment is when a defendant has removed or is about to remove property from North Carolina or has assigned, disposed of, or secreted - or is about to do so - property with the intent to defraud his or her creditors. N.C. Gen. Stat. § 1-440.3(5).

In order for the Court to issue an order of attachment, the moving party must submit an affidavit setting forth that plaintiff has commenced an action to secure a judgment for money, the amount of the potential judgment, the nature of the action, and the grounds for the attachment. N.C. Gen. Stat. § 1-440.11(a)(1). The North Carolina Statute also provides that the Court may "fix and determine all necessary procedural details in all instances in which the statute fails to make definite provision as to such procedure." N.C. Gen. Stat. § 1-440.9.

As the Court stated at the hearing, Plaintiff has satisfied the requirements of Section 1-440.11(a). Plaintiff has shown by affidavit that it has commenced an action to secure a judgment for money in the amount of $474,600.00, the nature of the action, the grounds for the attachment, and has set forth the facts and circumstances supporting the allegations that Defendants have acted with the intent to defraud their creditors by continuing to the spend the insurance proceeds and transferring some of the funds to their daughter. (Voelker Aff. ¶¶4-9, Jun. 10, 2011.) Accordingly, the Court **GRANTS** Plaintiff's Motion for Prejudgment Attachment [#34] and **DIRECTS** Plaintiff to submit an appropriate order of attachment that complies with N.C. Gen. Stat. § 1-440.12 to the Court. Upon submission of the Order and the payment of the $1,000.00 bond, the Court will issue an order of attachment.

**B.    Preliminary Injunction**

In order for a preliminary injunction to issue, Plaintiff must establish: (1) a likelihood of success on the merits; (2) that it is likely to suffer irreparable harm without the issuance of a preliminary injunction; (3) that the balance of the equities are in its favor; and (4) that the injunction is in the public interest. <u>West Virginia Ass'n of Club Ownners and Fraternal Servs., Inc. v. Musgrave</u>, 553 F.3d 292, 298 (4th Cir. 2009). Plaintiff has satisfied each of the requirements for the issuance of a preliminary injunction.

As a threshold matter, Plaintiff has demonstrated a likelihood of success on the merits of its conversion claim. Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's right." <u>Peed v. Burleson,'s Inc.</u>, 94 S.E.2d 351, 353 (N.C. 1956); <u>see</u> <u>also</u> <u>Wall v. Colvard, Inc.</u>, 149 S.E.2d 559, 564 (N.C. 1966). Here, Defendants deposited the insurance proceeds belonging to Plaintiff under the express terms of the Deed of Trust into their account and began spending those funds for their personal benefit. Accordingly, Plaintiff has demonstrated the unauthorized assumption of the right of ownership over insurance proceeds to which Plaintiff was entitled. <u>See</u> <u>Matter of Legg</u>, 386 S.E.2d 174, 180 (N.C. 1989). Plaintiff has demonstrated a likelihood of success on the merits on its conversion claim.

6

Plaintiff has also demonstrated that it is likely to suffer irreparable harm unless the Court issues a preliminary injunction. Although the availability of monetary relief to the prevailing party generally weighs against finding irreparable injury, a preliminary injunction is appropriate in situations like this where Defendants may become insolvent before a final judgment can be entered and collected. Hughes Network Sys., Inc. v. InterDigital Commc'n Corp., 17 F.3d 691, 694 (4th Cir. 1994). The record reflects that absent a preliminary injunction, Defendants will deplete the insurance proceeds at issue prior to the entry of a final judgment in this case. In fact, counsel for Defendants acknowledged that Defendants are currently spending the funds at the rate of $20,000.00 a month. Absent the Court enjoining Defendants from further depleting the insurance proceeds, Plaintiff will be unlikely to collect a judgment against Defendants.

Finally, both the public interest and the balance of the equities favor the granting of an injunction. Absent an injunction, Plaintiff will likely be unable to collect a judgment against Defendants. Defendants, however, will suffer little harm from enjoining them from further depleting the specific insurance proceeds at issue until the Court can determine the rightful owner of the funds. In addition, the public interest is best served by preserving the status quo until the Court can render a determination as to who is the rightful owner of the funds. Accordingly, the Court

**GRANTS** Plaintiff's request for a preliminary injunction and **ENJOINS** Defendants, their officers, agents, servants, employees, and attorneys from depositing, transferring, distributing, and/or spending the insurance proceeds. The Court **DIRECTS** Plaintiff to post a bond in the amount of $1000.00 as security for the issuance of the preliminary injunction. See Fed. R. Civ. P. 65(c).

### III. Conclusion

The Court **GRANTS** Plaintiff's Motion for Prejudgment Attachment [# 34]. The Court **DIRECTS** Plaintiff to submit an appropriate order of attachment that complies with N.C. Gen. Stat. § 1-440.12 to the Court. Upon submission of the Order and the payment of the $1,000.00 bond, the Court will issue an order of attachment. The Court also **ENJOINS** Defendants, their officers, agents, servants, employees, and attorneys from depositing, transferring, distributing, and/or spending the insurance proceeds pending further of this Court. The Court **DIRECTS** Plaintiff to post a bond in the amount of $1000.00 as security for the issuance of the preliminary injunction. The Court **DENIES** the Consent Motion to Continue Oral Argument [# 44].

Signed: July 12, 2011

Dennis L. Howell
United States Magistrate Judge